UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| STEVEN WOODWARD, ET AL., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | CIVIL ACTION NO. |
| VS. | ) | |
| | ) | 3:09-CV-0228-G |
| LIBERTY MUTUAL INSURANCE | ) | |
| COMPANY, ET AL., | ) | **ECF** |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Before the court is the motion of the plaintiffs, Steven and Lisa Woodward

("the Woodwards" or "the plaintiffs") to remand this case to the state court from

which it was removed. For the reasons discussed below, the motion is denied.

## I. BACKGROUND

### A. Procedural Background

The defendants removed this case to federal court on the basis of diversity of

citizenship jurisdiction. There are three defendants in this case: Liberty Mutual

Insurance Company ("Liberty"), James A. Greenhaw ("Greenhaw"), and Property

Claims Services, Inc. ("PCS").  Both Greenhaw and PCS are citizens of Texas.

Plaintiff's Brief in Support of the Motion to Remand ("Motion") at 2.  If an action is

removable only because the parties are diverse from one another, "none of the parties

in interest properly joined and served as defendants [may be] a citizen of the State in

which such action is brought."  28 U.S.C. § 1441(b).  Thus, according to the

Woodwards, the case is not removable because Greenhaw and PCS are both citizens

of Texas, the state in which the action was brought.  Further, diversity is not

complete, as required by *Strawbridge v. Curtiss*, 7 U.S. 267 (1806).  Here, however, the

defendants maintain that the Woodwards improperly joined Greenhaw and PCS for

the sole purpose of defeating this court's diversity jurisdiction.  Defendants' Response

to Plaintiff's Motion to Remand ("Response") at 1.

 According to the Fifth Circuit, there are two ways for the diverse defendant to

establish that the joinder of a non-diverse party was improper:  "(1) actual fraud in

the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause

of action against the non-diverse party in state court."  *Smallwood v. Illinois Central*

*Railroad Company*, 385 F.3d 568, 573 (5th Cir. 2004), *cert. denied*, 544 U.S. 992

(2005) (quoting *Travis v. Irby*, 326 F.3d 644, 646-67 (5th Cir. 2003)).  Here, the

defendants argue that the plaintiff cannot establish a cause of action against either

Greenhaw or PCS.  To determine whether this assertion is true, the court must

engage in a "Rule 12(b)(6)-type analysis, looking initially at the allegations of the

complaint to determine whether the complaint states a claim under state law against

the in-state defendant." *Id.*   Thus, the court must determine whether the Woodwards

have stated a claim against Greenhaw and PCS upon which relief can be granted.

B.   Factual Background

The Woodwards purchased homeowner's insurance from Liberty.   Motion at 3.

On July 8, 2008, the plaintiffs lost their home and its contents.   *Id.*   They

subsequently filed a claim for coverage with Liberty.   *Id.*   Liberty began to investigate

the claims and sent various personnel to evaluate the cost of replacement.   *Id.*   The

Woodwards believed that every person sent to assess the damage had insufficient

"experience, technical expertise, or knowledge to determine the damages to the

property."   *Id.*   As a result, Liberty invoked the appraisal process available under the

terms of the insurance contract.   *Id.*   This process allowed both Liberty and the

Woodwards to choose an appraiser.   *Id.* at 6.   The two selected appraisers would then

work together to choose an umpire.   *Id.*   Next, the appraisers would independently

determine the amount of loss for each item and then submit those amounts to the

umpire.   *Id.*   If the appraisers' values differed, the umpire would set the amount of

loss. *Id.*

After Liberty invoked this process, the Woodwards chose Andy Thompson

("Thompson") as their appraiser.   *Id.* at 4.   Liberty named Greenhaw as its appraiser.

*Id.*   After both sides had chosen an appraiser, Liberty informed the plaintiffs that

- 3 -

Greenhaw had chosen not to act as the appraiser for the Woodward's claim. *Id.* at 4-5. Greenhaw stated that his work load was overwhelming due to Hurricane Ike and he would not have time to handle the Woodwards' claim. *Id.* at 5. After Greenhaw's withdrawal, Liberty attempted to appoint a new appraiser. *Id.*

Meanwhile, the Woodwards asked Thompson to continue with his appraisal to determine the amount of the loss. *Id.* Thompson did so. When he had completed his appraisal, Liberty still had not appointed a new appraiser. Thompson's loss value was thus the only one presented to Liberty. *Id.* The Woodwards demanded that Liberty pay the loss amount determined by Thompson. *Id.* at 6. Liberty has not yet paid that amount or any other amount to the Woodwards.

## II. ANALYSIS

### A. Rule 12(b)(6) Standard

According to *Smallwood*, the court must engage in a "Rule 12(b)(6) type analysis" to determine whether the plaintiffs have stated a claim under state law against the in-state defendants. *Smallwood*, 385 F.3d at 573. The court will therefore first lay out the legal standard for a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). "To survive a Rule 12(b)(6) motion, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'" *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1974 (2007)), *cert.*

*denied*, __ U.S. __, 128 S.Ct. 1230 (2008). "While a complaint attacked by a Rule

12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's

obligation to provide the grounds of his entitlement to relief requires more than labels

and conclusions, and a formulaic recitation of the elements of a cause of action will

not do." *Twombly*, 127 S.Ct. at 1964-65 (citations, quotation marks, and brackets

omitted). "Factual allegations must be enough to raise a right to relief above the

speculative level, on the assumption that all the allegations in the complaint are true

(even if doubtful in fact)." *Katrina Canal*, 495 F.3d at 205 (quoting *Twombly*, 127

S.Ct. at 1965). "The court accepts all well-pleaded facts as true, viewing them in the

light most favorable to the plaintiff." *Id.* (internal quotation marks omitted) (quoting

*Martin K. Eby Construction Company v. Dallas Area Rapid Transit*, 369 F.3d 464, 467

(5th Cir. 2004)).

## B.  The Breach of Contract Claim

The first cause of action the Woodwards assert against Greenhaw and PCS is

breach of contract. *See* Motion at 9-10.  The plaintiffs assert that their insurance

contract with Liberty "imposed upon Greenhaw a duty and obligation . . . to confer

with Plaintiffs' appraiser, to select an umpire, [and] to set the amount of loss." *Id.* at

9.  The Woodwards complain that Greenhaw did not fulfill any of these obligations.

The defendants, however, argue that Greenhaw owed no duty to the plaintiffs to

perform any of these tasks.  Defendants' Response to Plaintiffs' Motion to Remand

("Response") at 2.  They assert that "[t]he insurance carrier alone owes a duty to the insured to participate in a properly invoked appraisal and owes a duty to pay in accordance with the appraisal award."  *Id.*  The court agrees.  In *Blanchard v. State Farm Lloyds*, 206 F.Supp.2d 840, 845 (S.D. Tex. 2001), the court stated that "Texas law is clear" in refusing to recognize a claim for breach of contract by an insured against an agent for an insurance company, such as an adjuster.  The Texas Supreme Court has "emphasized that an insurance agent not in a contractual relationship with an insured cannot be liable to the insured for breach of contract."  *Id.* (citing *Griggs v. State Farm Lloyds*, 181 F.3d 694, 700 (5th Cir. 1999)).  Likewise, it is only the insurance company, and not its agents, that owes a duty of good faith and fair dealing to its insureds.  *Natividad v. Alexsis, Inc.*, 875 S.W.2d 695, 697-98 (Tex. 1994).

In short, the Woodwards do not allege that Greenhaw and PCS were in a contractual relationship with the Woodwards.  Greenhaw was, at most, acting as an agent for Liberty.  Texas law is clear that an insured cannot maintain a claim for breach of contract against an agent for the insurance company.  The Woodwards therefore cannot establish a claim for breach of contract against Greenhaw or PCS.

## C.  The Civil Conspiracy Claim

The Woodwards also claim that Greenhaw, PCS, and Liberty all committed the tort of civil conspiracy.  They aver that Liberty and Greenhaw "agreed to act in a manner violating the Texas Deceptive Trade Practices Act and Texas Insurance Code

by causing delay in effectuating a prompt, fair and equitable settlement of a claim to which the insurer's liability has become reasonably clear." Motion at 13.  The elements of a claim of civil conspiracy, under Texas law, are "(1) a combination of two or more persons; (2) an object to be accomplished (an unlawful purpose or a lawful purpose by unlawful means)[;] (3) a meeting of minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as the proximate result." *Insurance Company of North America v. Morris*, 981 S.W.2d 667, 675 (Tex. 1998).  Because liability for such a claim "depends on participation in some underlying tort, . . . the plaintiff must show the defendant was liable for some underlying tort." *SP Midtown, Limited v. Urban Storage, L.P.*, 2008 WL 1991747, *9 (Tex. App.--Houston [14th Dist.] May 8, 2008, pet. den'd).  Here, the Woodwards allege that the underlying torts are the alleged violations of the Texas Deceptive Trade Practices Act ("TDTPA") and the Texas Insurance Code ("TIC").  Motion at 13.  Thus, for the Woodwards to establish that Greenhaw and PCS engaged in a civil conspiracy to commit these torts, they must show the torts themselves were committed.  The facts pled in the original complaint, however, do not state a claim under either the TDTPA or the TIC.

1. *The First Underlying Tort:  Violation of the TDTPA*

The TDTPA provides that "false, misleading, or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful and are subject to

action by the consumer protection division." *Id.* TEX. BUS. & COM. CODE

§ 17.46(a).  The statute goes on to list twenty-seven acts or practices that are

considered "false, misleading, or deceptive." *Id.* § 17.46(b)(1)-(27).  None of these

twenty-seven practices involves the delay in appraising an insured's claim.  Generally,

these twenty-seven practices involve deceiving a consumer about the source, quality,

or history of a particular good.  See *id.*  Thus, even if, as the Woodwards allege,

Greenhaw and Liberty conspired to delay the appraisal of the Woodwards' loss, such

conspiracy is not a false, misleading, or deceptive act as defined by the TDTPA.  See

*id.*  Further, if Greenhaw had performed an appraisal, the Woodwards would not be

"consumers" with respect to that appraisal.  *Bunting v. State Farm Lloyds*, 1999 WL

134642, *1 (N.D. Tex. March 4, 1999).  The TDTPA defines a consumer as "an

individual . . . who seeks or acquires by purchase or lease, any goods or services."

TEX. BUS. & COM. CODE § 17.45(4).  Any appraisal Greenhaw produced would have

been at the request of Liberty.  The Woodwards would not have acquired that

appraisal by purchase or lease.  The Woodwards have therefore not stated a TDTPA

claim against Greenhaw or PCS upon which relief can be granted.

### 2.  *The Second Underlying Tort:  Violation of the TIC*

The Woodwards are also unable to state a claim against Greenhaw for violation

of the TIC because Greenhaw is not a "person" to whom the TIC applies.  Section

541.060(a)(2) of the TIC states that it is an unfair or deceptive act to fail to make a

good effort to "effectuate a prompt, fair, and equitable settlement of a claim with

respect to which the insurer's liability has become reasonably clear."  Section 541.003

states that "[a] *person* may not engage in . . . an unfair or deceptive act in the business

of insurance." (emphasis added).  The word "person," however, does not refer to just

anyone; §541.002 defines a person as "an individual, corporation, association,

partnership . . . or other legal entity *engaged in the business of insurance*, including an

agent, broker, adjuster, or life and health insurance counselor." (emphasis added).

Thus, to be a "person" who may be liable for committing a deceptive act, the

individual must be engaged in the business of insurance.  The Texas Supreme Court

has held that "not every employee of an insurance company is a 'person' under [the

TIC]."  *Liberty Mutual Insurance Company v. Garrison Contractors, Inc.*, 966 S.W.2d

482, 486 (Tex. 1998).  An individual "who has no responsibility for the sale or

servicing of insurance policies and no special insurance expertise, such as a clerical

worker or janitor, does not engage in the insurance business." *Id.*  Here, although

Greenhaw was not a clerical worker or janitor, he had no responsibility to sell

Liberty's insurance policies.  Further, he had no responsibility to provide service to

Liberty's customers.  His appraisal, had he completed one, would have been

performed directly for Liberty -- not the Woodwards.  Finally, his work as an

appraiser does not require expertise in selling or servicing insurance policies.  It

requires only that he be an expert at assessing the value of personal and real property.

- 9 -

Moreover, the defendants fail to point to a single case in which an independent appraiser, hired by an insurance company, has been held to be engaged in the business of insurance. The only case the court has found addressing this exact issue held that an independent appraiser, just like Greenhaw, was *not* engaged in the business of insurance. *Bunting*, 1999 WL 134642 at *1. In *Bunting*, the court faced the exact issue this court faces now: whether joinder of a non-diverse independent appraiser hired by the insurance company pursuant to an appraisal clause was improper. *Id.* The court concluded that the independent appraiser was improperly joined because the plaintiffs could not state a claim for violation of the TIC against that independent appraiser. *Id.* The court reasoned that the insurance company's appraiser was not a "person" within the meaning of the TIC. *Id.* It stated that the appraiser hired by the insurance company was "no more in the business of insurance" than the plaintiffs' chosen independent appraiser. *Id.* This court agrees with the holding in *Bunting*. Greenhaw was hired to do nothing more than estimate the value of some particular goods and real estate. By doing so, Greenhaw was not engaged in the business of insurance. Thus, under Texas law, Greenhaw -- and, by extension, PCS -- are not subject to liability under the Texas Insurance Code.

Because the plaintiffs cannot establish a cause of action against Greenhaw for a violation of either the TIC or the TDTPA, they likewise cannot establish a civil conspiracy to commit either of these torts. As stated above, civil conspiracy in Texas

is a derivative tort which requires the plaintiff to show that the defendant is liable for some underlying tort. *SP Midtown*, 2008 WL 1991747 at *9. Even if all the facts the plaintiffs assert are true, they cannot state a claim against Greenhaw and PCS for the two underlying torts they plead. By extension, they cannot state a claim for civil conspiracy.

### III.  CONCLUSION

For the reasons discussed above, the motion to remand is **DENIED**.

**SO ORDERED**.

July 2, 2009.

_____
A. JOE FISH
**Senior United States District Judge**