UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| STEVEN WOODWARD, ET AL.,   ) | |
|   ) | |
|   Plaintiffs,   ) | |
|   ) | CIVIL ACTION NO. |
| VS.   ) | |
|   ) | 3:09-CV-0228-G |
| LIBERTY MUTUAL INSURANCE   ) | |
| COMPANY, ET AL.,   ) | **ECF** |
|   ) | |
|   Defendants.   ) | |

## MEMORANDUM OPINION AND ORDER

Before the court is the motion of the defendant Liberty Mutual Insurance Company ("Liberty Mutual") to compel appraisal and to stay this action pending the completion of appraisal (docket entry 16). For the reasons discussed below, the motion is granted.

### I. BACKGROUND

#### A. Factual Background

Lighting struck the roof of the plaintiffs' (Steven and Lisa Woodard, collectively, "the Woodwards") home in July 2008, and it damaged some electronic

equipment inside their home. Motion to Compel Appraisal and to Stay Lawsuit Pending Completion of Appraisal ("Motion") at 2; *see also* Notice of Removal of Action Under 28 U.S.C. §§ 1332 and 1441(a) (Diversity) ("Notice of Removal"), Exhibit A, Plaintiffs' Original Petition ("Petition") ¶ 8. The Woodwards' home and its contents were insured against casualty loss by a homeowners insurance policy they had purchased from Liberty Mutual. Petition ¶ 8; *see generally* Texas Homeowners Policy, *located in* Appendix to Defendant's Motion to Compel Appraisal and to Stay Lawsuit Pending Completion of Appraisal ("Appendix") at 1-37. Shortly after the lightning strike, the Woodwards filed a claim with Liberty Mutual for coverage under their homeowners policy. Petition ¶ 8. Liberty Mutual did not dispute that the damage caused by the lightning strike was covered by the Woodwards' homeowners policy, and it began investigating the loss. Motion at 2; Petition ¶ 8. However, the Woodwards were dissatisfied with the qualifications of the personnel Liberty Mutual sent to investigate the loss. *See* Petition ¶ 9.

On September 9, 2008, Liberty Mutual invoked the appraisal clause of the Woodwards' homeowners policy. The appraisal clause provides:

> If you and we fail to agree on the actual cash value, amount of loss or the cost of repair, either can make a written demand for appraisal. Each will then select a competent, independent appraiser and notify the other of the appraiser's identity within 20 days of receipt of the written demand. The two appraisers will choose an umpire. If they cannot agree on an umpire within 15 days, you or we may request that the choice be made by a judge

>of a district court of a judicial district where the loss occurred.  The two appraisers will then set the amount of loss, stating separately the actual cash value and loss to each item.
>
>If the appraisers fail to agree, they will submit their differences to the umpire.  An itemized decision agreed to by any two of these three and filed with us will set the amount of loss.  Such award shall be binding on you and us.

Texas Homeowner's Policy Form A at 6, *located in* Appendix at 30.  Liberty Mutual's invocation of the appraisal clause was the first in the following series of events:

- <u>September 9, 2008</u>:  Liberty Mutual notified the Woodwards that it was initiating the appraisal process; its notice mistakenly designated Jim Greenhall as its appraiser.  *See* Petition ¶ 10.

- <u>September 17, 2008</u>:  The Woodwards asked Liberty Mutual to provide information on Jim Greenhall's qualifications.  *Id.* ¶ 11.

- <u>September 19, 2008</u>:  Liberty Mutual sent the Woodwards a resume that correctly identified its appraiser as Jim Greenhaw ("Greenhaw").  *Id.* ¶¶ 12-13.

- <u>September 26, 2008</u>:  The Woodwards notified Liberty Mutual that (1) they believed Greenhaw lacked the experience and training necessary to accurately appraise the damage to their electronic equipment; and (2) they were appointing Andy Thompson ("Thompson") as their appraiser.  *Id.* ¶ 14.

- <u>October 3, 2008</u>:  Liberty Mutual notified the Woodwards that Greenhaw had withdrawn as Liberty Mutual's appraiser due to an extremely high

>       workload resulting from Hurricane Ike. *Id.* ¶ 15.
>       Liberty Mutual "then attempted to appoint a new
>       appraiser." Petition ¶ 15.

Thompson appraised the damage to the Woodwards' home and estimated the value of the Woodwards' loss at $77,201.30. *See* Petition ¶ 17. The Woodwards presented Thompson's estimate of their loss to Liberty Mutual and demanded payment. *Id.* ¶¶ 17-18. Liberty Mutual refused to pay. *Id.* ¶ 18.

The Woodwards filed suit against Liberty Mutual, Greenhaw, and Greenhaw's employer on December 23, 2008, in the 134th Judicial District Court of Dallas County, Texas, alleging deceptive trade practices and breach of contract. Petition ¶¶ 22-31. Removal to this court was effected on February 4, 2009. *See* Notice of Removal at 8. Following removal, Greenhaw and his employer were dismissed from the action. *See* Order of July 2, 2009 (docket entry 15) at 1.

Liberty Mutual subsequently moved to compel the Woodwards to participate in the appraisal process mandated by their homeowners policy and to stay this action pending completion of the appraisal process. *See* Motion at 1. Liberty Mutual contends that the Woodwards have failed to comply with their contractual obligation to participate in the appraisal process by filing suit before that process was completed. Motion at 3. According to Liberty Mutual, the appraisal process is not complete because the amount of the Woodwards' loss has not been set by an agreement between the parties' appraisers or between one appraiser and an umpire. *Id.* at 5.

The Woodwards respond with two counter-arguments. First, they contend that they fully participated in the appraisal process by having Thompson render an estimate of their loss and that the appraisal process was complete once Thompson submitted his estimate to Liberty Mutual. *See* Petition ¶ 19. To the extent that the appraisal process has not been completed, the Woodwards advance a second counter-argument, the precise nature of which is unclear. The Woodwards either maintain that Greenhaw's withdrawal as Liberty Mutual's appraiser constituted a refusal by Liberty Mutual to participate in the appraisal process and that Liberty Mutual has thus waived its right to avail itself of the appraisal process, see *id.* ¶¶ 20-21, or that Liberty Mutual is estopped from compelling appraisal because it lacked authority under the contract to appoint a replacement appraiser following Greenhaw's withdrawal, *see* Plaintiffs' Response in Opposition to Defendant's Motion to Compel Appraisal and to Stay Lawsuit Pending Completing of Appraisal ("Response") at 4-5.\*

---

\*    The Woodwards contend that the evidence submitted by Liberty Mutual in support of its motion is inadmissible hearsay. The Woodwards first contend that the copy of their homeowners policy submitted by Liberty Mutual is hearsay. Response at 1-2. But it is well-settled that "[s]igned instruments such as . . . contracts . . . are writings that have independent legal significance, and are nonhearsay." *Kepner-Tregoe, Inc. v. Leadership Software, Inc.*, 12 F.3d 527, 540 (5th Cir.) (footnotes, citations, and internal quotation marks omitted), *cert. denied*, 513 U.S. 820 (1994); see also *Everest Indemnity Insurance Company v. Allied International Emergency LLC*, 2009 WL 2030421, at \*2 (N.D. Tex. July 14, 2009) (Means, J.) ("A contract is not hearsay and, consequently, need only be authenticated in order to be admissible."). Because the Woodwards objected to the homeowners policy only on the ground that it is hearsay, their objection is overruled. Cf. *United States v. Jimenez Lopez*, 873 F.2d 769, 773 (5th Cir. 1989) (concluding that the objection that a

(continued...)

B.  Procedural Background

Liberty Mutual seeks to compel enforcement of an appraisal clause contained in an insurance contract.  *See* Motion at 1. "The Texas Supreme Court recently enunciated a strong policy in favor of enforcing appraisal clauses in insurance contracts . . .." *Sanchez v. Property and Casualty Insurance Company of Hartford*, 2010 WL 413687, at *4 (S.D. Tex. Jan. 27, 2010) (citing *State Farm Lloyds v. Johnson*, 290 S.W.3d 886, 888-89, 895 (Tex. 2009)).  A completed appraisal that complies with the terms of an appraisal clause in an insurance contract is a condition precedent to bringing a suit on that contract.  *Johnson*, 290 S.W.3d at 894.  An appraisal clause may be enforced via an order for specific performance.  See *In re Allstate County Mutual Insurance Company*, 85 S.W.3d 193, 195 (Tex. 2002) (citing *Scottish Union & National Insurance Company v. Clancy*, 71 Tex. 5, 8 S.W. 630, 631-32 (Tex. 1888)). Indeed, if an appraisal clause is properly invoked and one party to the contract refuses to participate in the appraisal process, a court lacks discretion not to issue an order compelling that party to participate. See, *e.g., Vanguard Underwriters Insurance Company v. Smith*, 999 S.W.2d 448, 449, 451 (Tex. App.--Amarillo 1999, orig.

---

[*](...continued)
document is improperly authenticated is insufficient to preserve the objection that the document's contents are hearsay) (citing FED. R. EVID. 103(a)(1)).

The Woodwards also contend the letters exchanged by the parties are inadmissible hearsay.  Response at 2.  Because the court's order does not rely on any information contained within those letters, the court does not consider this objection.

proceeding) (per curiam) (conditionally granting a writ of mandamus ordering a trial court to grant an insurer's motion to compel an insured to submit to appraisal).

Liberty Mutual also asks the court to stay this action pending the completion of the appraisal process. *See* Motion at 1. "[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. North American Company*, 299 U.S. 248, 254 (1936). A stay is a tool of docket management, and questions of docket management are left to the sound discretion of the district court. *Id.* at 254-55. When one party to an insurance contract properly invokes the contract's appraisal clause but the other party files suit before the appraisal process is complete, a court should exercise its discretion to stay the suit pending completion of the appraisal. See, *e.g.*, *Smith*, 999 S.W.2d at 449.

## II.  ANALYSIS

### A.  Completed Appraisal

The court concludes that the appraisal process mandated by the Woodwards' homeowners policy has not been completed. An appraisal award is binding on the parties to an insurance contract only when the appraisal is made pursuant to the provisions of the contract's appraisal clause. *Bunting v. State Farm Lloyds*, 2000 WL 191672, at *3 (N.D. Tex. Feb. 14, 2000) (Kaplan, M.J.) (citing *Wells v. American States Preferred Insurance Company*, 919 S.W.2d 679, 683 (Tex. App.--Dallas 1996,

writ denied)). An appraisal award may be set aside or disregarded when, *inter alia*, it was not made "in substantial compliance with the terms of the contract." *Id.* (citing *Wells*, 919 S.W.2d at 683).

In this case, the Woodwards contend that the appraisal process was complete once Thompson rendered his estimate of the their loss and provided his estimate to Liberty Mutual, Petition ¶ 19, and that Liberty Mutual is thus asking the court to compel a second appraisal, an outcome that is neither countenanced by the homeowners policy nor sanctioned by the law, Response at 3. The court will assume, for the sake of argument, that Thompson completed some kind of an appraisal process by rendering and submitting his estimate. Even so, there are two reasons why that appraisal process was not completed in substantial compliance with the requirements imposed by the appraisal clause of the Woodwards' homeowners policy. First, the appraisal clause requires the two appraisers to choose an umpire. Texas Homeowner's Policy Form A at 6, *located in* Appendix at 30. No umpire was ever chosen. Second, the appraisal clause requires both appraisers to "set the amount of loss." *Id.* No appraiser appointed by Liberty Mutual ever set the amount of loss. Therefore, the court concludes that the appraisal process mandated by the Woodwards' homeowners policy has not yet been completed.

B. <u>Waiver</u>

The court also concludes that Liberty Mutual has not waived its right to participate in the appraisal process. Insurance policies are interpreted according to general principles of contract law. *Smith*, 999 S.W.2d at 451 (citing *Barnett v. Aetna Life Insurance Company*, 723 S.W.2d 663, 665 (Tex. 1987)). General principles of contract law define waiver as "an affirmative defense that can be successfully maintained against a party who intentionally relinquishes a known right or engages in intentional conduct inconsistent with asserting that right." *Sanchez*, 2010 WL 413687, at *4. The key to the waiver inquiry is "[t]he question of intent to waive the right." *In re Acadia Insurance Company*, 279 S.W.3d 777, 779 (Tex. App.--Amarillo 2007, orig. proceeding). The acts of an insurer relied on by an insured to prove that the insurer waived the right to invoke an appraisal clause in an insurance contract must be "reasonably calculated" to make the insured believe that compliance with the terms of the appraisal clause "is not desired, or would be of no effect if performed." *Scottish Union*, 8 S.W. at 632.

The party asserting that the right to an appraisal under an appraisal clause has been waived bears the burden of proof. *Sanchez*, 2010 WL 413687, at *4 (citing *In re State Farm Lloyds, Inc.*, 170 S.W.3d 629, 634 (Tex. App.--El Paso 2005, orig. proceeding)). "Waiver is ordinarily a question of fact, but where the facts are admitted or clearly established, it becomes a question of law. The trial court may

determine whether an appraisal has been waived as a matter of law at the preliminary stages of litigation." *Id.* (citations and internal quotation marks omitted).

In this case, the court concludes that Liberty Mutual, by allowing Greenhaw to withdraw, did not waive its rights under the appraisal clause. It is undisputed that Liberty Mutual properly "invoked the appraisal process," *see* Response at 4, and that Liberty Mutual attempted to appoint a replacement appraiser twenty-four days after it invoked the appraisal process, *see* Petition ¶ 15. The Woodwards' waiver argument proceeds from the premise that there was an "absence of participation [in the appraisal process] by the appraiser appointed by Defendant Liberty Mutual." *See* Petition ¶ 19. That premise, however, flies in the face of the facts. Liberty Mutual actively participated in the appraisal process, first when it appointed Greenhaw, and later when it attempted to appoint a replacement appraiser when Greenhaw withdrew just four days after the deadline for appointing appraisers had passed. Liberty Mutual's conduct did not manifest any intention to abandon the appraisal process, to relinquish its rights under the appraisal clause, or to convey to the Woodwards that their compliance with the appraisal clause was not desired. Compare *Sanchez*, 2010 WL 413687, at *8 (holding that an insurer had waived its right to appraisal where it had waited almost a year to invoke appraisal and offered "no evidence that its delay in requesting an appraisal was due to a good faith attempt to ascertain the amount of damages"). An insurer that permits its designated appraiser to withdraw waives its

rights under an appraisal clause only where the appraiser withdrew "without the fault of either party, *and* the insurer refused to name another [appraiser] to take his or her place." *See* LEE R. RUSS, 15 COUCH ON INSURANCE § 211:75 (3d ed. Westlaw current through December 2009) (emphasis added). The court concludes, as a result, that Liberty Mutual did not waive its right to invoke the appraisal clause.

C.  Estoppel

In the alternative, the Woodwards' briefing might be construed to argue that Liberty Mutual should be estopped from appointing a replacement appraiser because there is no clause in the homeowner's policy that authorizes the appointment of replacement or substitute appraisers. *See* Response at 4-5. This argument is also without merit. The Woodwards' homeowners policy is silent on the question of whether the parties are allowed to appoint replacement appraisers if one of their designated appraisers withdraws after the 20-day deadline for appointing appraisers has passed. "When a contract is silent on an issue, Texas courts will infer reasonable terms." *Lidawi v. Progressive County Mutual Insurance Company*, 112 S.W.3d 725, 731 (Tex. App.--Houston [14th Dist.] 2003, no pet.) (citation omitted). A missing term should be inferred when it is necessary to effectuate the intent of the parties. *Id.* at 731-32. The intent of the parties is measured as of the time of the contract's formation. See *Manufacturing Management System, Inc. v. Camshaft Machine Company*, 125 F.3d 852, 1997 WL 574867, at *3 (5th Cir. Aug. 25, 1997) (per curiam) ("Of

course, although we look to the intent of the parties to determine the meaning of a contract, that intent must be such as is expressed in the terms of the agreement.")

In this case, the court infers a reasonable a term permitting the parties to select replacement appraisers within a reasonable time of the resignation or withdrawal of one of their designated appraisers. Cf. *Sanchez*, 2010 WL 413867, at *5 (explaining that where an insurance contract contains an appraisal clause but is silent on the deadline by which the parties must appoint appraisers, Texas law instructs courts to infer a contractual term requiring the parties to appoint appraisers within a reasonable time).  The intent of the parties at the time they formed the contract was to create an appraisal process that would produce a middle-ground amount of loss by requiring both parties' appraisers (or one appraiser and the umpire) to agree on the amount of loss.  Inferring a term that permits the appointment of a replacement appraiser within a reasonable time following the withdrawal of a designated appraiser effectuates that intent.  The Woodwards' argument would have one party forfeit its rights under the appraisal clause whenever its appraiser withdraws, even for reasons beyond that party's control.  The result would be that the other party's appraiser could unilaterally dictate the amount of loss.  That result cannot be reconciled with the intent manifested in the appraisal clause of the parties' contract.

The Woodwards also contend that the delay occasioned by Liberty Mutual's attempt to change appraisers "has hindered the [Woodwards] in proceeding with

their claim." Petition ¶ 20.  This contention strains credulity.  The Woodwards offer no substantiation of their claim that they were somehow prejudiced by the withdrawal of Greenhaw -- who the Woodwards believed was unqualified to perform the appraisal -- a mere four days after the deadline for appointing appraisers had passed (and while there was still more than a week remaining until the deadline for the parties' appraisers to choose an umpire).  As a result, the court concludes that Liberty Mutual is not estopped from invoking the appraisal clause.

### III.  CONCLUSION

For the reasons discussed above, Liberty Mutual's motion to compel appraisal is **GRANTED**, and this action is **STAYED** until the appraisal process is completed.

Within sixty days of this date, the parties shall notify the court in writing as to the status of the appraisal process.

**SO ORDERED.**

March 26, 2010.

_____
**A. JOE FISH**
**Senior United States District Judge**